# In the United States Court of Federal Claims

No. 13-513C
(Filed: January 24, 2014)

* * * * * * * * * * * * * * * * * * * * *

LOURDES G. BAIRD, et al.,

                              *Plaintiffs*,

v.

UNITED STATES,

                              *Defendant*.

* * * * * * * * * * * * * * * * * * * * *

Compensation Clause of Article III; damages; statute of limitations; continuing claim doctrine.

*Deborah Leonard*, Reno, NV, for plaintiffs.

*Loren Misha Preheim*, Trial Attorney, Commercial Litigation Branch, Civil Division, Department of Justice, Washington, DC, with whom were *Stuart F. Delery*, Assistant Attorney General, *Jeanne E. Davidson*, Director, *Reginald T. Blades, Jr.*, Assistant Director, for defendant.

## OPINION

BRUGGINK, *Judge*.

This is a pay claim brought by 22 retired federal judges. They contend that their retirement pay has been unconstitutionally diminished in that their retirement pay has not been adjusted to reflect cost of living allowances that took effect for active duty judges in 1995, 1996, 1997, and 1999. They contend that this is a violation of Article III of the United States Constitution and 28 U.S.C. §§ 371 and 461 (2006). The United States moves to dismiss for lack of jurisdiction on the ground that plaintiffs' claims were not brought within the applicable six year limitations period. *See* 28 U.S.C. § 2501 (2006). The matter has been fully briefed, and we heard oral argument on January 17, 2014. For the reasons set out below, we deny the government's motion.

## BACKGROUND

The Compensation Clause of Article III of the Constitution provides that "Judges . . . shall, at stated Times, receive for their services, a Compensation, which shall not be diminished during their Continuance in Office." U.S. Const. Art. III, § 1. In *Beer v. United States*, 696 F.3d 1174 (Fed. Cir. 2012), *cert. denied*, 133 S. Ct. 1997 (2013), the Federal Circuit held that Article III judges had improperly been denied six cost of living allowances. The court reasoned that Congress improperly reduced the plaintiffs' compensation and violated the Constitution by withholding from their pay cost of living adjustments ("COLAs"), which were assured under the Ethics Reform Act of 1989, Pub. L. No. 101-194, § 704, 103 Stat. 1716, 1769 (codified as amended at 28 U.S.C. § 461). This Act provides that, when General Schedule employees receive a pay increase, Article III judges also receive a COLA. *See id.*

In certain years when General Schedule employees received adjustments to pay, Congress passed laws blocking those COLAs for judges. It did so for the fiscal years of 1995, 1996, 1997, and 1999. Congress also withheld judicial COLAs in 2007 and 2010, not because it passed blocking legislation to prevent those pay increases, but because it relied on an interpretation of an amended statute, which provided that appropriations to increase pay for federal judges had to "be specifically authorized by Act of Congress hereafter enacted." Pub. L. No. 97-92, § 140, 95 Stat. 1183, 1200 (1981) (hereinafter "Section 140"); *see also* 28 U.S.C.A. § 461 note (2000). This authorization requirement expired by its own terms, however, in 1982. *Williams v. United States*, 240 F.3d 1019, 1026-27 (Fed. Cir. 2001). Congress revived it in 2001, however. Pub. L. No. 107-77, § 625, 115 Stat. 748, 803 (2001). As the *Beer* court explained, reliance on Section 140 to withhold the 2007 and 2010 COLAs was inappropriate because the 1989 Ethics Reform Act had been a subsequent authorization of judicial COLAs, thus meeting the requirements of Section 140. *See* 696 F.3d at 1185-86 (holding that the Ethics Reform Act satisfied the "hereafter enacted" requirement of Section 140). The Federal Circuit concluded that plaintiffs must be compensated "for the diminished amounts they would have been paid if Congress had not withheld the salary adjustments mandated by the Act." *Id.* at 1186.

The present plaintiffs are all former Article III federal judges who retired after one or more of the first four blocked COLAs (1995, 1996, 1997, 1999) but prior to the effective date of the last two COLAs (2007, 2010).

Their claim is that their retirement pay should have reflected COLAs that had been enacted, but wrongfully blocked, prior to retirement. They point to three statutory provisions. First, 28 U.S.C. § 135 provides that the active duty pay of federal judges is set at a rate determined under the Federal Salary Act of 1967, 2 U.S.C. §§ 351-61 (2012), as adjusted by 28 U.S.C. § 461. Section 461, in turn, incorporates the Ethics Reform Act of 1989, which, as *Beer* held, means that active duty judges' salaries should have been adjusted by the "missing" COLAs. *See* 28 U.S.C. § 461. Finally, 28 U.S.C. § 371 states that, upon retirement, a judge receives "an annuity equal to the salary he was receiving at the time he retired." Plaintiffs argue that section 371 should be interpreted, in light of the *Beer* holding, to entitle them to the *correct* salary at the time of retirement. They clam that their retirement annuities should be corrected to reflect what they should have been earning as active duty judges immediately prior to retirement and that they should be awarded as damages the difference between that amount and what they actually received during the six years prior to filing of this action.

Because none of the plaintiffs retired after 2006, none claim entitlement to the COLAs adopted in 2007 or 2010. Their suit commenced on July 26, 2013. The parties agree that the court's general six year statute of limitations applies, hence plaintiffs' causes of action cannot predate 2007. *See* 28 U.S.C. § 2501. Although they retired before 2007, plaintiffs claim the benefit of the "continuing claims" doctrine, under which certain pay claims are renewed each time a payment is made for less than the correct amount. Plaintiffs concede that the asserted annuity under-payments before August 2007 are barred by the limitations period, but they contend that they can recover every under-payment following July 2007.

The United States concedes that any judge who retired within the six year limitations period would be protected,[1] because they were in active duty status during the limitations period. The key for defendant is that the moment of transition out of active duty status must occur within the limitations period. Because none of the present plaintiffs retired within six years prior to filing, defendant contends that plaintiffs' causes of action accrued before 2007, and that their claims cannot be salvaged by the continuing claims doctrine.

---

[1]One of the judges in the *Beer* case, for example.

## DISCUSSION

The Tucker Act permits the court to hear claims for money based upon "any Act of Congress." 28 U.S.C. § 1491(a)(1) ("The United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress . . . ."). The Ethics Reform Act of 1989 is an act of Congress and is plainly money-mandating. We thus have subject matter jurisdiction.

On the face of it, plaintiffs' assertion that their claims are not stale, at least with respect to the past six years, would seem to be correct. In *Beer*, the court held that the claims of the judges there were "continuing claims": "As relief, appellants are entitled to monetary damages for the diminished amounts they would have been paid if Congress had not withheld the salary adjustments mandated by the Act." 696 F.3d at 1186. This despite the fact that most of the missing COLAs had initially been triggered more than six years prior to commencement of the action.

Defendant acknowledges that the lapse of more than six years after the COLAs would not be fatal to the present plaintiffs' claims if they had retired within six years of filing this suit. What it argues is that their claims, in contrast to the *Beer* plaintiffs, depend on an additional statute, 28 U.S.C. § 371 (the retirement provision). Defendant contends that

> A claim for diminishment of judicial salary while in office is not the same as a statutory claim regarding a retirement annuity payment . . . . Put another way, to prevail, plaintiffs must succeed on two claims. The first claim is that, while in office, their salary was unconstitutionally diminished as a result of the failure to provide COLAs in certain years. . . . The second claim is that, when they retired, their annuity was improperly calculated as a result of the failure to pay them the constitutionally-correct salary. . . . Without succeeding on the claim that their salary, while in office, was unconstitutionally diminished, they cannot succeed in having their retirement annuity recalculated.

Def.'s Mot. to Dismiss 3-4.[2]

We reject this artificial segregation of what amounts to one cause of action into two. Determining the correct active duty salary at the time of retirement is not an independent cause of action, it is merely part of determining the correct retirement pay. The amount of the annuity is fixed at the time of retirement. Plaintiffs' retirement annuities were miscalculated at the precise moments of those retirements. The fact that their active duty pay was also incorrect in the past does not foreclose their claim for the proper annuity. And if the continuing claims doctrine applies, each successive retirement payment thereafter gives rise to a new cause of action.

Several of the plaintiffs retired in 2006, for example. At the instant of their retirements, they *should* have received an annuity which incorporated all four missing COLAs. The fact that the day before retirement they could have made the argument that their active duty pay also should have reflected the same COLAs is true, but irrelevant. The character of the monies plaintiffs were being paid would have changed from a salary to an annuity the following day, but that does not preclude a retiree from asserting that his or her annuity was miscalculated. The government offers no principled reason why such a claim should be barred, and we see none.

The Federal Circuit rejected a similar argument in *Hatter v. United States*, 203 F.3d 795 (Fed. Cir. 2000). There, the government argued that the continuing claims doctrine did not apply because "plaintiffs' claims are not inherently susceptible to being divided into a series of independent and distinct wrongs. This is because the continued withholding of these taxes from plaintiffs' judicial salaries 'is simply the ongoing "damages resulting from the single earlier alleged [unconstitutional] violation by the government."'" *Id.* at 798 (quoting *Brown Park Estates-Fairfield Dev. Co. v. United States,* 127 F.3d 1449, 1457 (Fed. Cir. 1997) (internal citation omitted). The court distinguished *Brown Park Estates* and concluded that the fact that there was a single wrong in the past did not foreclose application of the continuing

---

[2]As the government conceded at oral argument, the fact that the first four COLAs were found in *Beer* to have been denied in violation of the plaintiffs' constitutional rights does not alter the analysis. The result here would be the same with respect to the last two COLAs, which the court in *Beer* held were improperly withheld after a strictly statutory analysis.

wrong doctrine, so long as the criteria for it were met, and they were. *Id.* at 799.

A single and complete cause of action thus arose at the time of retirement. The only remaining question is whether that cause of action continues to mature at every succeeding failure to pay the proper annuity, i.e., whether the cause of action is subject to the continuing claims doctrine. Defendant's primary assertion is, as suggested above, that the court never gets to the continuing claim doctrine because plaintiffs' claims, like epoxy, are composed of two elements, which were not combined within the six year limitations period. We have rejected that position. Defendant goes on, however, to suggest that plaintiffs are, in fact, "receiving an annuity in the amount intended by Congress." They point out that, "[p]laintiffs do not allege that they are not receiving an annuity equal to the salary that they were receiving at the time they retired . . . ." Def.'s Mot. to Dismiss 4. This argument is taken from the language of 28 U.S.C. § 371, which provides a judge an annuity equal to the "salary he was receiving at the time he retired."

We do not understand the government to contend that the very language of section 371 locks in place permanently whatever mistakes were made in the past. The simple answer to such an assertion would be that it begs the question: what was the correct salary at the time of retirement? We understand the government instead to be arguing that plaintiffs had one opportunity to challenge their annuity, at the time of retirement, and that opportunity is now stale.

The question thus is whether a claim for a retirement annuity is, like the claims in *Beer* for active duty pay, ongoing, or whether miscalculation of an annuity is fundamentally different in kind from a claim for miscalculation of a salary. Once again, we disagree with the government.

In *Friedman v. United States*, 310 F.2d 381 (1962), the Court of Claims analyzed the court's not-entirely consistent application of the continuing claims doctrine in an effort to set out its metes and bounds. That case involved the widow of a serviceman whose husband had retired more than six years prior to commencement of her suit. The assertion was that her husband should have been retired on disability, giving her the benefit of a higher annuity. Before addressing Mrs. Friedman's claim, the court described the rationale and circumstances for application of the doctrine:

The court's pay cases (military and civilian) concerned with the issue of limitations have often applied the so-called 'continuing claim' theory, i.e., periodic pay claims arising more than six years prior to suit are barred, but not those arising within the six-year span even though the administrative refusal to pay the sum claimed may have occurred, or the statute on which the claim is grounded may have been enacted, prior to six years. . . . The important characteristics of all these cases were: (a) Congress had not entrusted an administrative officer or tribunal with the determination of the claimant's eligibility . . . ; (b) the cases turned on pure issues of law or on specific issues of fact which the court was to decide for itself . . . ; and (c) in general the cases called upon the court to resolve sharp and narrow factual issues not demanding judicial evaluation of broad concepts such as "disability" (concepts which involve the weighing of numerous factors and considerations as well as the exercise of expertise and discretion). For such cases . . . the "continuing claim" doctrine is wholly appropriate and in accord with the general jurisprudence in this country on the statute of limitations. Under those general principles the cause of action for pay or compensation accrues as soon as the payor fails or refuses to pay what the law (or the contract) requires; there is no other condition precedent to the accrual of the cause of action (such as a factual determination by an executive tribunal or the exhaustion of some special procedure or remedy). And where the payments are to be made periodically, each successive failure to make proper payment gives rise to a new claim upon which suit can be brought.

*Id.* at 384-85 (footnotes omitted).  Later in the opinion, the court condensed its analysis into a single distinction between "two separate categories of claims—'continuing claims' which are independent of administrative determination and those other claims dependent on prior administrative evaluation."  *Id.* at 387.  Mrs. Friedman's claim did not benefit from the continuing claims analysis because her husband's entitlement to disability retirement was subject in the first instance to review and final action by a Retiring Board.  *Id.* at 403.

The present pay claims comfortably fall within the criteria set out in *Friedman*: 1) no administrative tribunal has been entrusted with evaluating pay

7

eligibility; 2) the question of entitlement is purely one of law; 3) whatever fact issues might arise are narrowly focused (on dates of retirement or dates of death, for example).  *See also Hatter*, 203 F.3d at 798 ("pay claims not dependent on a discretionary finding–including claims for increased retirement pay because of new legislation, etc.–are continuing claims.").

It follows that plaintiffs are entitled to present their claims for improperly withheld retirement pay beginning with the first pay period commencing six years prior to July 2013.

## CONCLUSION

Because plaintiffs have a cause of action that accrues with each successive retirement annuity payment, their claims are not barred by the statute of limitations.  Accordingly, defendant's motion to dismiss is denied.  Defendant is directed to file its answer on or before February 10, 2014.

s/ Eric G. Bruggink
ERIC G. BRUGGINK
Judge

8